Michael D. Corey, Esq.
Laura S. Gould, Esq.
Brena, Bell & Walker, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Telephone:    (907) 258-2000
E-Mail:        mcorey@brenalaw.com
                lgould@brenalaw.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation, and ALLEGHENY CASUALTY COMPANY, a New Jersey corporation, <br><br> Plaintiffs, <br><br> v. <br><br> FRED ADKERSON, INC., an Alaska corporation, d/b/a FRED'S BAIL BONDING, and FRED PARKER ADKERSON, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. 3:20-cv-00247-TMB |

## MEMORANDUM IN SUPPORT OF MOTION FOR
## TEMPORARY RESTRAINING ORDER AND FURTHER INJUNCTIVE RELIEF

Plaintiffs, International Fidelity Insurance Company (International) and Allegheny

Casualty Company (Allegheny), seek to immediately freeze and ultimately receive control

of a collateral trust account currently in the possession of Defendants, Fred Adkerson, Inc.

d/b/a Fred's Bail Bonding (Fred's) and Fred Parker Adkerson (Adkerson) as fiduciary.

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska  99501
Phone:  (907) 258-2000
Facsimile:  (907) 258-2001

Memorandum in Support of Complaint for TRO and Further Injunctive Relief        October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*        Page 1 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 1 of 13

On information and belief, Plaintiffs contend that funds moving out of said account are not being properly directed, are not properly or adequately accounted for and reconciled, and/or the funds are commingled with funds not properly in the collateral account.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action based upon diversity of citizenship between Plaintiffs and Fred's under 28 U.S.C. § 1332(a)(1). Plaintiffs are surety providers incorporated in the state of New Jersey.[1] Adkerson owns Fred Adkerson, Inc., d/b/a Fred's Bail Bonding in Anchorage. The amount in controversy between Plaintiffs and Defendants is in excess of $75,000.

Venue is appropriate in the District of Alaska under 28 U.S.C. § 1391(b)(1)-(2).

## STATEMENT OF FACTS

On October 10, 1986, International entered into an Agency Contract (Contract) with Adkerson, in which International is referred to as "Company" and Adkerson is referred to as "Executing Agent."[2] The Contract provides in relevant part:

> 3. DUTIES OF EXECUTING AGENT. The Executing Agent will solicit and write business; collect and promptly transmit premiums and collateral according to such routine as may be prescribed by the Company; see to it that person bonded appear in court when required; adjust or assist in

---

[1] International and Allegheny are two of three companies that comprise AIA Holdings, Inc. (AIA). AIA is an acronym for three companies but is a separate entity, a Delaware corporation, which is headquartered in Calabasas, California and does business in Alaska. AIA is the managing general agent for International and Allegheny.

[2] Exhibit A. This Complaint primarily concerns International, though Allegheny has a more recent contract with Fred's that functions in essentially the same manner. Exhibit B.

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska  99501
Phone:  (907) 258-2000
Facsimile:  (907) 258-2001

Memorandum in Support of Complaint for TRO and Further Injunctive Relief     October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*     Page 2 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 2 of 13

the adjustment of claims if and as requested; *and in general, use his best endeavors to further the interests of the Company.*

\*

10.    PRINCIPAL'S COLLATERAL.    All money, securities or other collateral received by the Executing Agent from or for persons bonded or received from any other source as collateral in connection with the business of the Company *shall be received by the Executing Agent as trustee and shall be by him turned over to the Company.*

\*

13.    COMPANY RULES AND REGULATIONS.  *The Executing Agent will comply with all rules and regulations of the Company . . . strictly comply with all instructions given by the Company*, alter no obligation on the Company, agree to no extension of any bond, undertaking or obligations unless specifically authorized by the Company, and will treat as confidential and use only in the interest of the Company all instructions and information proceeding from the Company.

\*

22.    PAYMENT OF LOSSES.  It is clearly understood and agreed by all parties hereto that all payment of losses and/or loss expenses shall be made directly by the Executing Agent(s) and not from collateral deposit and /or indemnity funds (commonly known as build-up funds).[3]

On October 16, 1986, International sent a letter to Adkerson that addressed cash collateral among other issues:

Cash collateral up to $500.00 per bond may be maintained as follows:

Account Entitled:  "Fred P. Adkerson *in trust for International Fidelity Insurance Company*"

\*

Cash collateral over $500.00 per bond must be forwarded to the Home Office in Newark, New Jersey for proper recording.[4]

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

---

[3]    Exhibit A at 1-3 (italics added, underline in original).

[4]    Exhibit C at 1 (italics added, underline in original).

The collateral account is essentially a trust account, and Adkerson is the trustee for International. The collateral account is created because once a defendant or other person has paid the premium required for a bail bond, the insurance company or bonding agent may request additional collateral to secure the bond. Pursuant to paragraph 10 above, the collateral account is for money, securities, or other collateral received by Fred's in connection with the business of International. There are only three legitimate reasons for Adkerson to withdraw funds from the collateral account: (1) to transfer funds from the collateral account into the operating account to pay forfeitures, (2) to return cash collateral to the indemnitor, or (3) to transfer funds that escheat to the State of Alaska in the absence of (1) or (2) above.

On January 8, 2019, Adkerson withdrew $150,000.00 from the collateral account.[5] Notably, the copies of checks reflecting the withdrawals for the month of January 2019 are listed in chronological order – except for the copy of the check to Adkerson in the amount of $150,000.00, which is the last check listed and is clearly out of chronological order.[6] AIA performed a limited audit of Fred's in late July and early August 2019, but did not notice Adkerson's withdrawal at that time.[7]

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

---

[5]   Exhibit D at 2, 6.

[6]   Exhibit D at 3-6.

[7]   *See* Affidavit of Michele Faison.

On January 29, 2020, the State's Division of Insurance sent a letter to Adkerson to inform him of a balance due of $730,750.00 in unpaid bail bond forfeiture judgments.[8] The letter indicated that the bail bonds were issued by licensed representatives of Fred's and they identify International and/or Allegheny as sureties underwriting the bail bonds.[9] Adkerson, however, did not notify International or Allegheny of the State's letter to him.

On May 13, 2020, the State sent similar letters to International and Allegheny. The State informed International of a balance due of $712,125.00 in unpaid bail bond forfeitures,[10] and informed Allegheny of a balance due of $5,300.00 in unpaid bail bond forfeitures.[11] AIA has since found evidence that Fred's reporting and/or accounting is inconsistent and potentially fraudulent.[12] In addition, AIA's Chief Legal Officer, James D. Portman, has repeatedly requested a reconciliation of the collateral account from Fred's and has been told that the reconciliation is forthcoming.[13] To date, however, AIA has not received the reconciliation of the collateral account.

On August 5, 2020, undersigned counsel had a conversation with Fred's counsel, who advised that Adkerson withdrew the $150,000.00 because it was not "obligated" to

---

[8]      Exhibit E at 1.

[9]      Exhibit E at 1.

[10]      Exhibit F at 1.

[11]      Exhibit G at 1.

[12]      *See* Affidavit of Leah Schoen.

[13]      Exhibit H.

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

Memorandum in Support of Complaint for TRO and Further Injunctive Relief     October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*     Page 5 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 5 of 13

any other person or entity.[14]  Mr. Portman and undersigned counsel attempted to resolve this issue without court involvement,[15] but those efforts were unsuccessful.  International and Allegheny thus seek a TRO against Adkerson preventing him from withdrawing any funds from the collateral account.

International and Allegheny seek further injunctive relief requiring Adkerson to tender control of the collateral account as required under the Contract.  Mr. Portman and undersigned counsel similarly attempted to resolve the issue of control of the collateral account without court involvement,[16] but those efforts were similarly unsuccessful.[17] The fact that Adkerson withdrew $150,000.00 from the collateral account, the fact that his reporting is potentially fraudulent, and the fact that his counsel has advised that Adkerson withdrew the funds because they were not otherwise "obligated" justify Plaintiffs' exigent concerns about the collateral account.

## LEGAL STANDARD

Plaintiffs seeking injunctive relief must establish that: "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska  99501
Phone:  (907) 258-2000
Facsimile:  (907) 258-2001

---

[14]   Exhibit I at 3.

[15]   Exhibit I.

[16]   Exhibits J, K.

[17]   Exhibit L.

Memorandum in Support of Complaint for TRO and Further Injunctive Relief      October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*      Page 6 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 6 of 13

relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[18]

Plaintiffs seeking a TRO must establish the same elements required for the issuance of a preliminary injunction.[19] The purpose of a TRO is to maintain the status quo and prevent immediate harm pending a full hearing on a preliminary injunction.[20]

## ARGUMENT

**I.    BECAUSE ADKERSON IS IN VIOLATION OF THE CONTRACTS, HIS FIDUCIARY DUTY, AND THE LAW, PLAINTIFFS WILL LIKELY SUCCEED ON THE MERITS**

The Contract between International, referred to as "Company," and Adkerson, referred to as "Executing Agent," expressly sets forth the duties of Adkerson with respect to the collateral account:[21]

> 10.    PRINCIPAL'S COLLATERAL.    All money, securities or other collateral received by the Executing Agent from or for persons bonded or received from any other source as collateral in connection with the business of the Company *shall* be received by the Executing Agent as trustee and *shall* be by him turned over to the Company.[22]

---

[18]    *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 846 (D. Alaska 2012), (quoting *Sierra Forest Legacy v. Ray*, 577 F.3d 1015, 1021 (9th Cir. 2009)).

[19]    *Shell Offshore*, 864 F. Supp. 2d at 847 ("This court has previously assessed these factors when granting Shell's motion for a Temporary Restraining Order."). *See also Bronco Wine Co. v. U.S. Dep't of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996).

[20]    *Bronco Wine*, 997 F. Supp. at 1313.

[21]    As noted above, this Complaint primarily concerns International, though Allegheny has a more recent contract with Fred's that functions in essentially the same manner. *See* n.2, *supra*.

[22]    Exhibit A at 2 (emphasis added).

BRENA, BELL & WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

Memorandum in Support of Complaint for TRO and Further Injunctive Relief    October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*    Page 7 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 7 of 13

The Alaska Administrative Code sets forth the applicable law regarding the receipt of collateral by a licensee or surety in connection with a bail bond, and how the collateral must be kept. Specifically, 3 AAC 23.800 provides in relevant part:

> A licensee or surety who receives collateral in connection with a bail bond transaction *shall* receive the collateral in a fiduciary capacity. Until the forfeiture of bail, the licensee or surety *must* keep the collateral separate from any other funds or assets of the licensee or surety.[23]

The collateral account is thus *only* for money, securities, or other collateral received by Adkerson in connection with the business of International. As a result, all of the funds in the collateral account are or should be obligated to another person or entity.

In addition, AS 21.27.360 establishes limits as to how money held by a licensee as a fiduciary may be treated:

> Money held by a licensee as a fiduciary may *not* be treated as a personal asset, as collateral for a personal or business loan, or as a personal asset or income on a financial statement, except that money held by the licensee as a fiduciary may be included in a financial statement of the licensee if clearly identified as assets held by the licensee as a fiduciary.[24]

Thus, the funds in the collateral account held by Adkerson as a fiduciary may not be treated as personal funds and may only be legitimately withdrawn to (1) transfer funds to pay forfeitures, (2) return cash collateral to the indemnitor, or (3) transfer funds that escheat to the State. Adkerson either improperly withdrew funds from the collateral account for some reason other than forfeiture, return, or escheatment—or he is commingling funds because

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

---

[23]   3 AAC 23.800(a) (emphasis added).

[24]   AS 21.27.360(e) (emphasis added).

Memorandum in Support of Complaint for TRO and Further Injunctive Relief          October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*          Page 8 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 8 of 13

he allegedly withdrew funds not earmarked as collateral held and ultimately to be forfeited, returned, or escheated.  Either of these actions is a violation of the Contract, his fiduciary duty as trustee, and the law.[25]

The Contract also requires Adkerson to turn over the collateral account to International:  "All money, securities or other collateral received by the Executing Agent . . . in connection with the business of the Company shall be received by the Executing Agent as trustee *and shall be by him turned over to the Company*."[26]  The Contract further requires Adkerson to comply with all rules and regulations of the Company, and "*strictly comply with all instructions given by the Company*[.]"[27]  Adkerson's failure to turn over the collateral account is similarly a violation of the Contract and his fiduciary duty as trustee.  International will thus likely succeed on the merits.

## II.	PLAINTIFFS WILL LIKELY SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

There was a balance of approximately $900,000.00 in the collateral account at the end of January 2019, after Adkerson's withdrawal of $150,000.00.[28]  There was similarly

---

[25]	Under AS 11.46.620, "[a] person commits the crime of misapplication of property if the person knowingly misapplies property that has been entrusted to that person as a fiduciary or that is property of the government or a financial institution."  AS 11.46.620(a). The term "misapply" in this context means to deal with or dispose of property contrary to law, a judicial rule or order, or the obligations of a fiduciary relationship.  AS 11.46.620(c). Other applicable legal authority is discussed below.

[26]	Exhibit A at 2, ¶ 10 (emphasis added).

[27]	Exhibit A at 2, ¶ 13 (emphasis added).

[28]	Exhibit D at 1-2.

BRENA, BELL & WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska  99501
Phone:  (907) 258-2000
Facsimile:  (907) 258-2001

Memorandum in Support of Complaint for TRO and Further Injunctive Relief	October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*	Page 9 of 13

a balance of approximately $900,000.00 from February 2019 through June 2020.[29] Plaintiffs will likely suffer irreparable harm if this Court declines to grant their request for a TRO against Adkerson preventing any withdrawals from the collateral account.

Through his counsel, Adkerson has alleged that he withdrew funds from the collateral account that are not "obligated" to another person or entity. There is no evidence that Adkerson would be able to replace improperly withdrawn funds, even if Plaintiffs were to obtain a damages award through legal action. International thus has approximately $900,000.00 at risk. Absent control of the collateral account, International has no way to ensure that the account is being properly managed to prevent any losses and attendant irreparable harm.

## III. BECAUSE ADKERSON IS IN VIOLATION OF THE CONTRACTS, HIS FIDUCIARY DUTY, AND THE LAW, THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR

As set forth above, whether Adkerson improperly withdrew funds from the collateral account or whether he is commingling assets, Adkerson's actions are a violation of the Contract, his fiduciary duty, and the law.

The Alaska Administrative Code, 3 AAC 23.640, sets forth the applicable law on commingling assets and provides in relevant part:

(a) Money other than that allowed by AS 21.27.360(d) may not be commingled with money held in a fiduciary capacity under AS 21.27.350.
(b) Service charges may be periodically withdrawn by the financial institution from a licensee's fiduciary account if sufficient money for that

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

---

[29]  Exhibit M. The bank statements between January 2019 and June 2020 will be provided upon request.

Memorandum in Support of Complaint for TRO and Further Injunctive Relief        October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*        Page 10 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 10 of 13

purpose, belonging to the licensee as allowed by AS 21.27.360(d), is maintained in that fiduciary account.

(c) The maintenance in a fiduciary account of money not allowed by AS 21.27.360(d) is a violation of AS 21.27.360.[30]

The referenced statute, AS 21.27.360(d), provides:

A licensee may *only* commingle premium taxes and fees, premiums, and return premiums with additional money for the purpose of advancing premiums, establishing reserves for the payment of return premiums, or reserves for receiving and transmitting premium or return premium money.[31]

To the extent there were and/or are funds in the collateral account that were and/or are not "obligated" to another person or entity, i.e. not earmarked as collateral held and ultimately to be forfeited, returned, or escheated, Adkerson was and/or is commingling funds in violation of AS 21.27.360.

Adkerson's refusal to tender control of the collateral account is similarly a violation of the Contract, his fiduciary duty, and the law. For reasons similar to the reasons Plaintiffs will likely succeed on the merits, the balance of equities tips solidly in Plaintiffs' favor.

## IV.    THE INJUCTIVE RELIEF SOUGHT IS IN THE PUBLIC INTEREST

In *Shell Offshore*, the District Court noted that "[t]he public interest is not disserved by an injunction that precludes illegal or tortious conduct."[32]    The illegal nature of Adkerson's conduct is set forth above.  It follows that the public interest will not be disserved by a TRO against Adkerson to preclude him from making any additional

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

---

[30]    3 AAC 23.640(a)-(c).

[31]    AS 21.27.360(d) (emphasis added).

[32]    *Shell Offshore*, 864 F. Supp. 2d at 853.

Memorandum in Support of Complaint for TRO and Further Injunctive Relief          October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*          Page 11 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 11 of 13

improper withdrawals from the collateral account for which he is the trustee on behalf of International.

It also follows that the public interest will not be disserved by a preliminary injunction to require Adkerson to tender control of the collateral account to International as required under the Contract. Finally, the public interest will be served by protecting the funds in the collateral account to ensure they go to the individuals or entities rightfully entitled to them—whether it is the indemnitors or the State. This includes funds that should be, but are not, going to the State to pay forfeitures.

## CONCLUSION

Adkerson withdrew $150,000.00 from the collateral account, apparently for a purpose other than forfeiture, return, or escheatment. In addition, Adkerson's reporting and/or accounting is potentially fraudulent. Lastly, Adkerson allegedly withdrew the funds because they were not "obligated" to any person or entity—in which case the funds were commingled with funds that were properly in the collateral account.

Under these facts, Plaintiffs will likely succeed on the merits. Plaintiffs will also likely suffer irreparable harm in the absence of preliminary relief to protect approximately $900,000.00 in the collateral account. The facts also demonstrate that the balance of the equities tips solidly in Plaintiffs' favor. Finally, it is in the public interest to protect the funds in the collateral account to ensure they reach their proper recipients. Plaintiffs thus respectfully request that this Court immediately issue a TRO against Adkerson preventing

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

Memorandum in Support of Complaint for TRO and Further Injunctive Relief    October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*    Page 12 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 12 of 13

any withdrawals from the collateral account, and set a hearing for the accompanying motion for further injunctive relief.

DATED this 1st day of October, 2020.

BRENA, BELL & WALKER, P.C.
Attorneys for Plaintiffs

By _____
Michael D. Corey, ABA No. 8511130
Laura S. Gould, ABA No. 03310042

BRENA, BELL &
WALKER, P.C.
810 N Street, Suite 100
Anchorage, Alaska 99501
Phone: (907) 258-2000
Facsimile: (907) 258-2001

Memorandum in Support of Complaint for TRO and Further Injunctive Relief          October 1, 2020
*International Fidelity and Allegheny Casuality vs. Fred Adkerson, Inc.*          Page 13 of 13

Case 3:20-cv-00247-TMB   Document 4   Filed 10/01/20   Page 13 of 13